## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ABBOTT LABORATORIES, | ) |
| | ) |
| Plaintiff, | ) |
| and | ) |
| | ) |
| SURMODICS, INC. and INVERNESS | ) |
| MEDICAL SWITZERLAND GMBH, | ) |
| | ) |
| Involuntary Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 07 C 3428 |
| | ) |
| CHURCH & DWIGHT, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

  Defendant Church & Dwight ("C&D") has moved the Court to transfer this patent infringement suit, brought by plaintiff Abbott Laboratories ("Abbott"), to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a). Litigation between these two parties, in reversed roles, is ongoing there. The claims of patent infringement Abbott asserts in this Court were the subject of a counterclaim that the New Jersey district court dismissed. On that basis, C&D also seeks to have this Court dismiss one count of Abbott's complaint under the doctrine of issue preclusion. For the reasons set forth below, the Court denies C&D's motion to transfer and grants its motion to dismiss Count 3 of Abbott's complaint.

1

# I. Background

This case concerns patents that cover lateral flow immunology devices and methods of use for testing, among other things, pregnancy and ovulation. Abbott alleges C&D has infringed U.S. Patent Nos. 5,654,162 (the '162 patent) and 6,020,147 (the '147 patent), of which Abbott is the exclusive licensee. Abbott has joined the owner of these patents, SurModics, Inc., as an involuntary plaintiff under Federal Rule of Civil Procedure 19(a). Abbott also alleges that C&D has infringed U.S. Patent No. 6,534,320 (the '320 or "Detergent" patent), of which Abbott says it is the exclusive licensee "as it relates to Church & Dwight." Compl. at 3. Abbott has likewise joined Inverness Medical Switzerland GmbH ("Inverness"), the owner of the '320 patent, as an involuntary plaintiff.

In April 2005, C&D filed suit against Abbott in the U.S. District Court for the District of New Jersey. The case was assigned to the Hon. Garrett E. Brown, Jr., chief judge of that district. In that suit, C&D alleged Abbott had infringed three patents known as the Charleton patents. Abbott asserted a counterclaim against C&D for patent infringement, including all three patents that are the focus of Abbott's suit in this Court. In July 2006, Abbott sought to file an amended counterclaim under Rule 19 that would have joined Inverness, which also owns two other Detergent patents not at issue in this case, as a necessary party. In October 2006, Chief Judge Brown denied Abbott's motion and granted C&D's cross-motion to dismiss the counterclaim. Chief Judge Brown held that Abbott lacked standing under 35 U.S.C. § 281 to sue for infringement of the '320 patent, which it had assigned to Inverness in 2003. He also rejected Abbott's belated attempt to join Inverness under Rule 19, citing precedent from the U.S. Court of Appeals for the Federal Circuit that requires dismissal if the original plaintiff in a patent

infringement suit lacks standing at the start of the lawsuit.

Abbott has now filed in this Court a new suit alleging infringement of the '320 patent and the '162 and '147 patents. This time, it has named the patents' owners at the outset of the case. Before the Court are C&D's motions to transfer the case to the District of New Jersey and to dismiss on issue preclusion grounds Abbott's claim of infringement of the '320 patent.

## II. Discussion

### A. C&D's Motion for Transfer to the District of New Jersey

C&D asks this Court to transfer Abbott's suit to the U.S. District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The movant . . . has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).[1] In ruling on a motion for transfer, the Court considers the § 1404(a) criteria "in light of all the factors of the case," an inquiry that "necessarily involves a large degree of subtlety and latitude," including over how much weight to give each of the statutory criteria. *Id*. at 219 (*citing Christopher v. Am. News Co*., 176 F.2d 11 (7th Cir. 1949), *and Brown v. Grimm*, 624 F.2d 58, 59 (7th Cir. 1980)); *see also, Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

---

[1] Because this case arises under patent law, this Court applies the substantive law of the Federal Circuit, except to procedural issues not unique to patent law. *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1254 (Fed. Cir. 2002). The Court applies Seventh Circuit precedent to the latter. *See id*.

3

1. **Venue**

Abbott's argument against transfer on the grounds that venue is improper in the District of New Jersey is unavailing. Abbott asserts that that court lacks jurisdiction over Inverness, an involuntary plaintiff in this suit and therefore this action could not have been brought originally in that district. The provision under Rule 19 for joining a person (in practice, typically a patent owner) as an involuntary plaintiff is available "only if the person is beyond the jurisdiction of the court, and is notified of the action, but refuses to join." 7 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1606, at 73 (3d ed. 2001) (*citing Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459 (1926)). That is, joinder of an involuntary plaintiff is triggered by a lack of jurisdiction over a party whose participation is desirable for a just, efficient result or, as in this case, is necessary for the original plaintiff to have standing to sue. Under the circumstances, it makes no sense to use lack of jurisdiction as a basis to deny transfer.

The Court therefore turns to the other two factors under § 1404(a): the convenience of the parties and witnesses and the interest of justice.

2. **Convenience of the parties and witnesses**

The factors the Court must evaluate with regard to the convenience of the parties and witnesses are: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties of litigating in the respective forums." *Millennium Prods., Inc. v. Gravity Boarding Co.,* 127 F. Supp. 2d 974, 980 (N.D. Ill. 2000).

Courts typically defer to the plaintiff's choice of forum, particularly when the plaintiff resides in the district selected. *See FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364, 368 (7th

4

Cir. 1979). Abbott resides in this district. Therefore, this factor weighs against transfer and the Court must give it substantial weight.

C&D makes two arguments against deferring to Abbott's choice. First, it argues that the preferential weight given to plaintiffs' choice of forum is "typically overridden in patent-infringement actions if the plaintiff has chosen to sue in the a district other than where the alleged infringer is located." Defs.' Repl. Mem. at 9-10. C&D relies on language from *Habitat Wallpaper and Blinds, Inc. v. K.T. Scott Ltd. Partnership*, 807 F. Supp. 470 (N.D. Ill. 1992), that "[i]ntellectual property infringement suits often focus on the activities of the alleged infringer, its employees, and its documents; therefore, the location of the infringer's principal place of business is often the critical and controlling consideration." *Id*. at 474. C&D reads too much into *Habitat* and other cases it cites for this point. Both the plaintiff's forum choice and the alleged infringer's location are factors to which courts ruling on motions to transfer in patent suits give significant weight. The latter does not "typically overrid[e]" the former on its own. If it did, a patent holder residing in one district would never be able to litigate an infringement claim against a non-resident defendant in the plaintiff's home forum.

Moreover, the relative weight of the factors in § 1404(a) analysis is not predetermined. *Coffey*, 796 F.2d at 220 n.3. C&D in effect asks the Court to give automatic and controlling weight to the second factor listed above, the situs of material events, because in a patent infringement action these events—e.g., development, production, and marketing decisions about items that infringe on plaintiff's intellectual property rights—ordinarily take place at defendant's place of business. *See S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1888 (N.D. Ill. 1983). Yet a defendant seeking to transfer venue to another district cannot simply point to its

5

principal place of business in another district and prevail automatically.  The Court must give appropriate weight to the plaintiff's forum choice.

Second, C&D argues that because Abbott originally asserted its claims here as counterclaims in the New Jersey action, the Court should give less weight to its choice of forum.  C&D does not cite to any cases to support its argument, however.  Courts typically discount a plaintiff's choice of forum when the plaintiff is not a resident of the district selected, *see, e.g., Doage v. Bd. of Regents*, 950 F. Supp. 258, 259-60 (N.D. Ill. 1997), when the district selected has no strong connection to the events from which the litigation stems, *see, e.g., Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014 (N.D. Ill. 1998), or both, *see, e.g., S.C. Johnson*, 571 F. Supp. at 1187.  The Court sees no basis in the law to discount Abbott's choice based on the fact that it previously asserted its claims in the New Jersey action.

The second factor, the situs of material events in the case, favors transfer to the extent the alleged infringement took place at C&D's principal place of business in New Jersey.  For the reasons laid out above, however, the Court does not give controlling weight to this factor.

The third factor, ease of access to sources of proof, is not typically of much importance in patent infringement cases.  *Photogen, Inc. v. Wolf*, No. 00 C 5841, 2001 WL 477226, *5 (N.D. Ill. May 7, 2001).  "[N]o matter where the trial is held, all relevant documents—regarding both the patented invention and the allegedly infringing technology—will have to be collected, copied, and sent to the offices of trial counsel" in Chicago and New York.  *CoolSavings.Com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1006 (N.D. Ill. 1999).  Moreover, "modern technology has made it easier and cheaper to transfer information than ever before." *Id*.  As C&D points out, Abbott has produced some 300,000 pages of documents in the New Jersey

litigation. This suggests that no serious technical or cost barriers to document production exist in this case. To the extent it matters at all, this factor does not favor transfer.

C&D argues that the fourth factor, the convenience of the witnesses, favors transfer because its employees, who will give crucial testimony about the allegedly infringing acts, are concentrated in New Jersey. The Court disagrees. In assessing this factor, Courts typically presume that witnesses who are parties' employees and paid experts will appear voluntarily and therefore are less concerned about the burden that appearing at trial might impose on them. *Millennium Prods.,* 127 F. Supp. 2d at 980 (*citing College Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1055 (N.D. Ill. 1995)); *Peach Tree Bancard Corp. v. Peachtree Bancard Network, Inc.*, 706 F. Supp. 639, 641 (N.D. Ill. 1989) ("Generally, where particular witnesses are within the control of a particular party, the witnesses likely will appear voluntarily."). Nor does C&D identify any significant non-party witnesses to whom the presumption of voluntary appearance would not apply. On the other side, Abbott's argument that the presence of the inventors of the '320 patent in this district weighs against transfer is of no importance because, as discussed below, the Court dismisses Abbott's claim of infringement as to that patent.

The fifth factor, the convenience for the parties of litigating in the respective forums, does not favor transfer. Abbott's home is in this district, and C&D's is in New Jersey. Litigating in this district likely would impose fewer costs on Abbott and more on C&D; litigating in New Jersey would reverse the scenario. Transfer will not be ordered if it would merely shift the burden of inconvenience from one party to the other. *Millennium Prods., Inc.*, 127 F. Supp. 2d at 980 (*citing Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989)).

7

### 3. Interests of justice

Under § 1404(a), the Court must also weigh the "interests of justice." Because this case is not a diversity action involving state law, familiarity with the applicable law does not favor either forum. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). Therefore, the interests-of-justice analysis principally concerns the efficient functioning of the courts. *Coffey*, 796 F.2d at 221.

C&D argues that judicial economy favors transfer to New Jersey, where Chief Judge Brown has presided over litigation between the main parties in this suit for two years and has made rulings on the claims Abbott asserts here. C&D argues that Chief Judge Brown's experience with C&D's suit against Abbott makes him "especially qualified" to handle this case expeditiously. Defs.' Repl. Mem. at 7. But there is no indication that Chief Judge Brown had to deal with any contested matters regarding the patents in this case. Indeed, Abbott's counterclaims relating to the Detergent patents were dismissed early in the New Jersey litigation, before much discovery was done and before these patents were construed. There is no reason to believe that Chief Judge Brown's work on the motion to dismiss would lead to any simplification of issues or reduced judicial burden were the case to be transferred. In sum, the interests of justice do not clearly favor transfer from this Court.

Taking both the private and public factors under § 1404(a) into account, the Court determines that C&D has failed to meet its burden of showing that transfer is clearly warranted. The Court therefore denies its motion.

### B. C&D's Motion to Dismiss Count 3 of Abbott's Complaint

C&D also asks the Court to dismiss Count 3 of Abbott's complaint, which alleges

infringement of the '320 patent. The Court agrees with C&D that the New Jersey district court resolved the issue of Abbott's standing to sue for infringement of the '320 patent and that it may not be relitigated here.

To avail itself of the federal common law of issue preclusion, a party must show that the same issue sought to be precluded was actually litigated and determined in the prior suit in a way that was essential to a final ruling and that the party against whom preclusion is invoked was fully represented in the prior action. *Wash. Group Int'l, Inc. v. Bell, Boyd & Lloyd LLC*, 383 F.3d 633 (7th Cir. 2004) (*citing People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 178 (7th Cir. 1995)). The court considering whether to invoke issue preclusion determines for itself what matters were settled by the first court. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 525 (7th Cir. 1985) (*citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)).

Because Abbott challenges only whether the same issue is involved in both cases, the Court examines the issue that the New Jersey court decided and compares it to the issue Abbott raises here.

Roughly ten months after it filed its answer and counterclaim in the New Jersey action, Abbott sought leave to file an amended counterclaim and to join Inverness as a co-plaintiff under Rule 19. C&D filed a cross-motion seeking to dismiss Abbott's counterclaim for lack of standing. In October 2006, Chief Judge Brown ruled on both motions, denying Abbott's and granting C&D's. His ruling addressed two issues: Abbott's standing to sue for infringement of

the '320 patent in its own name and its standing to sue if it joined Inverness under Rule 19.² On the second issue, Chief Judge Brown held that it was too late for Abbott to cure the jurisdictional defect, citing *Schrieber Foods v. Beatrice Cheese, Inc.*, 402 F.3d 1198 (Fed. Cir. 2005), for the rule that a patent infringement suit must be dismissed if the original plaintiff lacked standing at the time of filing.

On the first issue, Chief Judge Brown held that Abbott lacked standing because the agreement under which Abbott assigned the patent to Inverness sharply restricted Abbott's rights. He rejected Abbott's argument that it retained sufficient rights to sue C&D for infringement in its own name. He concluded that "Abbott ha[d] failed to meet its burden of proving that it is anything more than a non-exclusive licensee of the Detergent Patents," which include the '320 patent. Defs.' Ex. 10 at 6.

C&D urges the Court to give preclusive effect to this determination. The importance of the point stems from the well settled rule that non-exclusive licensees lack standing to sue for patent infringement. *E.g., Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1553-54 (Fed. Cir. 1995); *Bicon Inc. v. The Straumann Co.*, 441 F.3d 945, 956 (Fed. Cir. 2006). In contrast, an exclusive licensee may in some circumstances have standing to sue as a co-plaintiff with the patent owner. *Rite-Hite*, 56 F.3d at 1552. "To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but

---

² To be precise, Chief Judge Brown considered Abbott's standing both before and after September 30, 2003, the date on which it assigned the detergent patents to Inverness. He determined that because Abbott and Inverness's agreement of that date assigned the latter the right to sue for past infringements, Abbott also lacked standing to sue for infringement that took place before September 30, 2003. Thus, the question of Abbott's standing before that date was effectively subsumed into the analysis of its standing after the agreement's execution.

also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well." *Id*. Abbott argued before Chief Judge Brown and continues to assert here that it is an exclusive licensee of the '320 patent as far as C&D is concerned. Yet Chief Judge Brown determined, after careful analysis of Abbott's licensing agreement with Inverness, that Abbott did not retain sufficient rights to be considered an exclusive licensee.

Abbott focuses its argument on the identity-of-issues requirement for issue preclusion, which Abbott says is not met because Inverness's presence from the outset of this case means the Court will not have to decide whether Abbott can cure a jurisdictional defect after filing suit. Abbott's argument overlooks the other issue Chief Judge Brown decided—namely, its standing to sue under any set of circumstances. The issue of Abbott's status as an exclusive or non-exclusive licensee is logically antecedent to the issue of whether it could cure an existing defect by joining Inverness. If Abbott is a non-exclusive licensee of the '320 patent, it lacks standing even if it joins the patent owner as a co-plaintiff. Chief Judge Brown decided, based on the terms of Abbott's licensing agreement with Inverness, that it is a non-exclusive licensee. Abbott may not relitigate that determination.

Abbott would avoid preclusion had it gained new rights to the '320 patent between the time of Chief Judge Brown's ruling and now. This was the scenario in the case on which Abbott relies, *Moore U.S.A. Inc. v. The Standard Register Co.*, 60 F. Supp. 2d 104 (W.D.N.Y. 1999). Abbott attempts to analogize its joining of Inverness at the start of this suit to the acquisition of exclusive rights to the contested patent by the plaintiff in *Moore* after the first court determined it lacked standing. The analogy fails. To determine Abbott's standing, this Court would be

required to decide the same issue the New Jersey district court did: whether Abbott is a non-exclusive licensee.

Because Chief Judge Brown's determination of that issue is binding in this case, the Court dismisses Abbott's claim for infringement of the '320 patent.

### Conclusion

For the foregoing reasons, the Court denies C&D's motion to transfer and grants its motion to dismiss Count 3 of Abbott's complaint [docket no. 19]. The Court also dismisses involuntary plaintiff Inverness Medical Switzerland GmbH because Abbott's claim for infringement of the '320 patent, which Inverness owns, is dismissed and Inverness is therefore not expected to have any further role in the litigation.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 23, 2007